**In re Karen de KLEINMAN,**

**No. 95 Civ. 0165 (RO).**

United States District Court,
S.D. New York.

Nov. 2, 1995.

---

**6.** "Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S.

Const. amend. I.

Karen de Kleinman, Pro Se Ex-parte Application.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Before me is an ex parte application by Karen de Kleinman who is presently in civil detention in the Metropolitan Correction Center pursuant to an order of this Court on March 14, 1995. She had refused to comply with an earlier order of the Bankruptcy Court for disclosure (see fn 2, *infra*). She seeks leave to go (in federal marshals' custody) to a certain adjourned hearing in New York State Supreme Court on November 9 and to be permitted prior access to the New York State District Court library under marshals' supervision in connection with the hearing.

Mrs. de Kleinman, until her detention in March 1995, had occupied two apparently million dollar apartments at the Olympic Tower, 641 Fifth Avenue, New York, New York, asserting ownership, but had failed to make mortgage or maintenance payments since 1987. The unpaid maintenance charges had mounted to some $300,000. When earlier pressed with regard to the unpaid mortgage and maintenance payments, de Kleinman entered bankruptcy and began a course of conduct best described in the words of the first bankruptcy judge assigned to this case, Judge Prudence Abram in *In Re de Kleinman* 156 B.R. 131, 132 (Bank S.D.N.Y.1993). There the Judge stated:

> The Debtors in these Chapter 11 cases are mother [Karen, the Debtor herein] and daughter [Sabrina, a Debtor in a separate Chapter 11 case recently dismissed by the Bankruptcy Court]. Both pre- and post-petition, the mother has attempted to fend off foreclosure of her interests in various apartments located in New York City through prolific litigation which the mother has stated has all but consumed her life.

> This matter appears to be a garden variety motion to lift the automatic stay to permit foreclosure of a lien on a residential cooperative apartment. In another case, the matter would have long ago been resolved.

> However, the mother has undertaken to embark on a scorched earth campaign of litigation,[1] including making numerous attacks on the Court's integrity.

> As soon as this Court has heard and rendered a decision on one matter in these cases, the mother has filed motions for reargument, appeals, and even a corporate bankruptcy case. What taken individually could be viewed as a reasonable exercise of right, taken collectively, reflects an abject unwillingness to be bound by the rulings of any court, if she deems these rulings to be adverse to her.

This conduct, completely frustrating the trustee's efforts to administer the estate, continued after the case was transferred to Bankruptcy Judge Stuart Bernstein. Finally, Judge Bernstein in March 1994 directed the debtor de Kleinman to produce unquestionably appropriate schedules, lists and documents containing material and relevant information for the trustee of her estate.[2] She

---

1. [Footnote by the Court] Mrs. de Kleinman has obtained over thirty index numbers in this, the District Court, in appellate pursuant of this policy, and in the Court of Appeals one panel was prompted to write:

   [T]his is De Kleinman's fourth attempt to appeal the Bankruptcy Court's scheduling of a conference. If De Kleinman persists in bringing frivolous actions, this Court will require her to seek leave of the Court prior to filing future appeals.

*Karen de Kleinman v. American Home Assurance Co.*, 98–5059, 2d Cir. (March 24, 1994).

2. Judge Bernstein's order of production reads:

   [T]he debtor [de Kleinman] is, directed to prepare and file with the Clerk of this Court a schedule of unpaid debts incurred during the superseded Chapter 11 case herein including: (1) the name and address of each creditor, (2) the amount owed to each creditor, (3) the date each debt was incurred by the Debtor, and (4) the

refused to comply. Judge Bernstein found her in contempt and certified her contempt to this Court. On March 24, 1995, a year later, I held a hearing, determined that the order was appropriate, that the debtor was still in contempt of the order and that she had no intention whatever of complying with it. Accordingly, I affirmed the contempt and directed her incarceration as a civil contemnor in the Metropolitan Correction Center until she purged herself by complying with the order.[3] She appealed the order to the Court of Appeals for the Second Circuit which rejected her appeal on May 11, 1995. I then caused Ms. de Kleinman to be brought before the Court on June 5, to see if compliance with the Bankruptcy Court order was now something she was prepared to do and offered the Court's assistance in the mechanics of such compliance. This effort was met with complete rejection by the debtor. I was told by her that jurisdiction was now in the United States Supreme Court. That application has not been acted on.

The present application by Ms. de Kleinman to me has annexed to it a copy of her letter to State Supreme Court Justice Beatrice Shainswit, dated October 23, 1995. The opening paragraph of her letter (including its footnote) reads:

Dear Judge Shainswit:

On Thursday, October 19, 1995, I was served at MCC (where I have been *unconstitutionally* incarcerated since March 24, 1995)[*] with Citibank's Order To Show Cause, returnable before Your Honor on October 30, 1995. I write you to request a 30-day adjournment so as to afford me sufficient time and an opportunity to research my remedies and to investigate and respond to several material misrepresentations and other issues raised in Citibank's outrageously deceitful, perjurious, fraudulent and jurisdictionally defective papers—any one of which "fatalities" will ultimately require the Court' *sua sponte* vacation of the purported public auction sale on September 7, 1995, of residential condominium Unit 39–E, located in the Olympic Tower.

---

[*] By Bench Order of District Judge Richard Owen (USDC #95–0165 RO), for alleged coercive civil contempt for my refusal to "turn-over" my constitutionally protected "exempt" property. *See, Taylor v. Freeland and Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280.

It thus appears that Ms. de Kleinman seeks to participate in proceedings that involve her apartments in the Olympic Tower which are the subject of her bankruptcy proceeding in which she put herself in contempt.

It is of course axiomatic that in a civil contempt situation, the incarcerated contemnor has the keys to her freedom in her pocket and may walk out by simply complying with the court order and be at liberty to deal with her problems, federal and state. I do not, however, deem it appropriate to lift the restraint here in order to enable her to deal in person in state court with the collat-

consideration therefore; and to also file on or before March 31, 1994 a final report and account, all pursuant to Rule 1019 of the Bankruptcy Rules and . . . to prepare and provide to the Trustee on or before March 31, 1994 a list identifying all claims and causes of action in favor of the Debtor identifying the nature of each claim and cause of action, the names and addresses of the parties against whom such claims or causes of action have or may be asserted, and setting forth the amount sought to be recovered on account of each claim and cause of action; and . . . to provide . . . all documents including, without limitation, all reports, demands, insurance claims and receipts concerning or otherwise evidencing the Debtor's claims for damages arising from water damage to Apartment 39–E of the Olympic Tower, 641 Fifth Avenue, New York, New York, occurring in or about June, 1992, along with a written statement quantifying the damages sought to be recovered by the Debtor in connection with such loss and the name and address of all insurance agents and/or adjusters with whom the Debtor has communicated regarding this loss; and . . . to surrender and turn over to the Trustee on or before March 15, 1994 all of the shares of Apartment Locating, Inc. owned by the Debtor, along with the stock transfer ledger maintained by Apartment Locating, Inc.; and . . . to surrender to the Trustee on or before March 15, 1994 all pawn tickets and/or receipts evidencing the Debtor's pledge of any and all personal property including, but without limitation, pawn tickets and/or receipts concerning jewelry pledged by the Debtor to Beverly Loan Company and to the Provident Loan Society of New York. . . .

**3.** As she was being led out of the Courtroom, she twice said, "I am ready to comply with the order," but never did.

eral effects of what she has continuously refused to deal with directly in the Bankruptcy Court, resulting in a contempt order of that Court, reviewed and enforced by this Court and reviewed and left standing by the Second Circuit. I am confident that State Court Justice Shainswit will give full consideration to any written submission Mrs. de Kleinman wishes to make, just as Justice Shainswit did in granting Mrs. de Kleinman an adjournment after having considered her four-page single-spaced letter.

Accordingly, her request to be released, even in the custody of a U.S. Marshal, to attend a proceeding in State Supreme Court on November 9 is denied as is the collateral request.